JS 44 (Rev. 12/07) (cand rev 1-16-08)

ORIGINAL

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

### I. (a) PLAINTIFFS

LUXE INTERNATIONAL INC., a Delaware corporation; LUSSORI, INC., a Delaware corporation; and VIALUXE INC., a Delaware corp.

### DEFENDANTS

JOHN MADSEN, an individual, and DOES 1 THROUGH 10

**(b)** County of Residence of First Listed Plaintiff   SANTA CLARA
(EXCEPT IN U.S. PLAINTIFF CASES)

E-FILING

County of Residence of First Listed Defendant   SACRAMENTO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

ADH

Attorneys (If Known)

C08   02241 BZ

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury — Product Liability | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | **PRISONER** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. 1114, 1125

Brief description of cause:
Trademark Infringement, False Advertising

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

### IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE

DATE   4/30/08

SIGNATURE OF ATTORNEY OF RECORD

ORIGINAL
FILED

08 APR 30 PM 2: 01

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA S.J.

COPY

1  LATHAM & WATKINS LLP
      Richard B. Ulmer Jr. (Bar No. 124561)
2      Peter P. Chen (Bar No. 111426)
   140 Scott Drive
3  Menlo Park, CA 94025
   Telephone:  (650) 328-4600
4  Facsimile:  (650) 463-2600
   Email: dick.ulmer@lw.com  E-FILING
5      peter.chen@lw.com

6  LATHAM & WATKINS LLP
      Perry J. Viscounty (Bar No. 132143)
7  650 Town Center Drive, 20th Floor
   Costa Mesa, California  92626-1925  ADR
8  Telephone:  (714) 540-1235
   Facsimile:  (714) 755-8290
9  Email: perry.viscounty@lw.com

10 LATHAM & WATKINS LLP
      Jennifer L. Barry (Bar No. 228066)
11 600 West Broadway, Suite 1800
   San Diego, California  92101-3375
12 Telephone: (619) 236-1234
   Facsimile:  (619) 696-7419
13 Email:  jennifer.barry@lw.com

14 Attorneys for Plaintiffs
   LUXE INTERNATIONAL INC., LUSSORI, INC.
15 and VIALUXE INC.

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                    SAN JOSE DIVISION

19
                     C08  02241 BZ
20 LUXE INTERNATIONAL INC., a Delaware    CASE NO.
   corporation; LUSSORI, INC., a Delaware
21 corporation; and VIALUXE INC., a Delaware   COMPLAINT FOR PRELIMINARY AND
   corporation,                                PERMANENT INJUNCTIVE RELIEF AND
22                                             DAMAGES FOR:
            Plaintiffs,
23                                             1) BREACH OF CONTRACT;
        v.                                     2) TRADEMARK INFRINGEMENT;
24                                             3) FALSE ADVERTISING; AND
   JOHN MADSEN, an individual, and Does 1     4) UNFAIR COMPETITION
25 through 10,

26          Defendants.                        DEMAND FOR JURY TRIAL

27

28

LATHAM&WATKINS^^  SD\629262.1
ATTORNEYS AT LAW
ORANGE COUNTY                                COMPLAINT; DEMAND FOR JURY TRIAL

1    Plaintiffs Luxe International Inc. ("Luxe"), Lussori, Inc. ("Lussori"), and Vialuxe Inc.

2  ("Vialuxe," together with Luxe and Lussori, "Plaintiffs"), for their Complaint against defendants

3  John Madsen ("Madsen") and Does 1 through 10 (collectively, "Defendants"), hereby allege as

4  follows:

5                    **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

6    1.    This action is within the jurisdiction of this Court by virtue of the Lanham Act,

7  15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 (federal question jurisdiction) and § 1338 (original

8  jurisdiction over patent, copyright, and trademark cases, as well as unfair competition claims

9  joined to those claims). The Court has supplemental jurisdiction over Plaintiffs' state law claims

10  pursuant to 28 U.S.C. § 1367(a).

11    2.    Venue in this Court is proper under 28 U.S.C. § 1391(b), given that a substantial

12  part of the events giving rise to this action occurred in this district. Moreover, Madsen entered

13  into a written contract in which he agreed to submit to the jurisdiction and venue of this Court.

14    3.    Pursuant to Local Rule 3-2, this action may been assigned to the San Jose division

15  because the events alleged herein took place in Santa Clara County, or may be assigned district-

16  wide because the Complaint involves intellectual property.

17                                        **PARTIES**

18    4.    Plaintiff Luxe International Inc. is a Delaware corporation, and has its principal

19  place of business in Sunnyvale, California. Luxe was formerly known as Lussori, Inc.

20    5.    Plaintiff Lussori, Inc. is a Delaware corporation, and has its principal place of

21  business in Sunnyvale, California. Lussori is a wholly owned subsidiary of Luxe and was

22  formed after Luxe changed its name from Lussori, Inc. to Luxe International, Inc.

23    6.    Plaintiff Vialuxe Inc. is a Delaware corporation, and has its principal place of

24  business in Sunnyvale, California. Vialuxe is a wholly owned subsidiary of Luxe.

25    7.    On information and belief, Madsen is a California resident, and maintains a

26  consulting and design business called SOI Creative in Redwood City, California. Madsen is a

27  former employee of Luxe.

28    8.    Plaintiffs are ignorant of the true names of defendants Does 1 through 10,

1  inclusive, and therefore sue those defendants by such fictitious names.  Plaintiffs are informed

2  and believe, and on that basis allege, that defendants Does 1 through 10, inclusive, are

3  responsible for the acts complained of herein.  When the true names of such fictitious defendants

4  are ascertained, Plaintiffs will seek leave of this Court to amend this Complaint to name those

5  individuals or entities.

6      9.      Plaintiffs are informed and believe, and on that basis allege, that each of the

7  defendants, including the Doe defendants, was the agent and employee of the remaining

8  defendants and, at all times mentioned, acted within the course and scope of such agency and

9  employment.

10                          **GENERAL ALLEGATIONS**

11     10.      Luxe is a luxury goods company that operates subsidiaries that market and sell

12  luxury goods in retail locations and on the internet.  Lussori and Vialuxe are two such

13  subsidiaries.

14     11.      Lussori is a specialty retailer of luxury goods, including timepieces, jewelry, pens

15  leather goods and other accessories.  It maintains a physical store location in downtown Carmel,

16  California, and operates a retail website at <lussori.com>.

17     12.      Vialuxe is an online retailer of timepieces and jewelry, and operates a website at

18  <vialuxe.com>.

19     13.      Lussori is the owner of a federal trademark registration for LUSSORI (No.

20  3,160,858, issued on October 17, 2006) for "retail and online internet retail store services

21  specializing in fine jewelry, precious and semi-precious stones, and watches, goods made from

22  leather, pens, fine goods and accessories."  Lussori also owns a federal trademark application for

23  LUSSORI (Serial No. 78/652855, filed on June 17, 2005) for "jewelry, rings, earrings, cuff links,

24  bracelets, pendants, brooches, chains, necklaces, tie pins, pins for use as jewelry."

25     14.      Vialuxe is the owner of federal trademark applications for VIALUXE (Serial Nos.

26  77/348113, filed on December 10, 2007, and 77/353894, filed on December 17, 2007) for

27  jewelry, retail, mail order and online retails services for jewelry and watches, and websites for

28  jewelry.

1    15.    Lussori is the owner of copyrighted materials located at the Lussori website at
2    <lussori.com>, which contains copyrighted site source code, photographs of products, product
3    descriptions, and other specific design elements.

4    16.    Vialuxe is the owner of copyrighted materials located at the Vialuxe website at
5    <vialuxe.com>, which contains copyrighted site source code, photographs of products, product
6    descriptions, and other specific design elements.

7    17.    Luxe (then known as Lussori, Inc.) hired Madsen on or about January 10, 2005 to
8    be the company's Director of Technology.  One of Madsen's main responsibilities in that
9    position was to oversee and participate in the design and operation of the <lussori.com> website
10    and associated content management system, including the creation of the overall website design,
11    the website source code, the content publishing system, the customer relations and sales force
12    management system, and the customer records database.

13    18.    On November 16, 2006, Madsen entered into an Employee Confidentiality and
14    Inventions Assignment Agreement (the "ECIA Agreement") with Luxe (then known as Lussori,
15    Inc.). A copy of the ECIA Agreement is attached to this Complaint as Exhibit A and is
16    incorporated herein by reference.

17    19.    The ECIA Agreement provides that:

18        a.    Madsen will not reproduce, use and/or disclose Luxe's Confidential
19    Information (as that term is defined in the ECIA Agreement), including but not limited to Luxe's
20    designs, technology, inventions, processes, and source code, during or after his employment,
21    except with the express authorization of Luxe (Sections 1.1-1.2);

22        b.    Upon termination of his employment, Madsen will cease to use and will
23    return all copies and derivatives of Luxe's Confidential Information (see Section 1.2);

24        c.    Upon termination of his employment, Madsen will return all property of
25    the company to Luxe, including notes, memoranda, reports, drawings, blueprints, manuals,
26    materials, data, and other papers and records related to Luxe's Confidential Information and
27    Inventions (as that term is defined in the ECIA Agreement) (see Section 2);

28        d.    Madsen assigned to Luxe all right, title and interest in and to all Inventions

1  that related to his employment or which were invented during the period of his employment
2  (Sections 3.1-3.2); and

3        e.    Madsen acknowledged that all records related to the Inventions were the
4  sole property of Luxe (Section 3.3).

5      20.    During the course of his employment by Luxe, Madsen participated on a team of
6  employees which designed the <lussori.com> website. As part of that team, Madsen had access
7  to Luxe's Confidential Information, including designs, copyrighted materials, source code and
8  customer information.

9      21.    On or about April 20, 2007, Madsen terminated his employment with Luxe. On
10  information and belief, Madsen soon thereafter formed his own web design consulting company
11  called SOI Creative.

12      22.    On information and belief, one of Madsen's clients was Swiss Watch Gallery, a
13  competitor of Plaintiffs, which operates a website at <swisswatchgallery.com> and sells watches
14  and jewelry. Swiss Watch Gallery hired Madsen to redesign its website.

15      23.    Madsen's redesign of Swiss Watch Gallery's website incorporated numerous
16  elements of Luxe's Confidential Information. Madsen created the Swiss Watch Gallery website
17  to look extremely similar to Lussori's currently website, including using the same general design
18  and workflows, the same font, formatting, and headings, and a similar tagline. Madsen also used
19  Luxe's and Lussori's copyrighted materials, including photographs and product descriptions, on
20  the Swiss Watch Gallery site. On information and belief, Madsen also used the Lussori website
21  content management system and source code to design the Swiss Watch Gallery.

22      24.    Upon completion of his work for Swiss Watch Gallery, on or about April 13,
23  2008, Madsen sent an email solicitation to several employees of Lussori (and, on information
24  and belief, to numerous third parties) regarding his new company. A copy of that email
25  solicitation is attached to this Complaint as Exhibit B. The solicitation is entitled "From the
26  Designers of Lussori & Vialuxe" and the text includes a section called "Our Recent Experience"
27  which includes references to Lussori, using Lussori's logo, and to Vialuxe, using Vialuxe's logo.
28  Madsen, however, did not work on the Vialuxe website, which was completed after his departure

1    from Luxe.

2        25.    On information and belief, Madsen is making similar claims and use of Lussori's
3    and Vialuxe's logos on other marketing materials for his company.

4        26.    On information and belief, Madsen is offering similar website design services,
5    which incorporate Plaintiffs' Confidential Information and Inventions, to other potential
6    customers in the industry.

7        27.    Plaintiffs sent a cease-and-desist letter to Madsen on April 16, 2008 demanding
8    that he cease from any further use or disclosure of Plaintiffs' Confidential Information.  To date,
9    Madsen has not responded to that letter or stopped his unlawful activities as set forth above.

10                            **FIRST CAUSE OF ACTION**

11                              **(Breach of Contract)**

12        28.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 27.

13        29.    On or about November 16, 2006, Luxe and Madsen entered into a valid contract
14    in the form of the ECIA Agreement.  The consideration for Madsen's agreement was valid and
15    appropriate, and included a payment of $500.00, which was paid on or about November 30,
16    2006.

17        30.    Luxe performed or substantially performed all of its obligations under the ECIA
18    Agreement.

19        31.    Madsen breached the ECIA Agreement by using and disclosing Luxe's
20    Confidential Information and Inventions, and failing to return all property of Luxe as required by
21    that agreement.

22        32.    As a direct and proximate result of Madsen's breaches of the ECIA Agreement,
23    Plaintiffs have suffered foreseeable damages in an amount to be determined at trial, but in excess
24    of the jurisdictional minimum.

25        33.    The full extent of Plaintiffs' injuries caused by Madsen's breaches of the ECIA
26    Agreement are not readily ascertainable, and, without injunctive relief, Plaintiffs have no means
27    by which to control Madsen's misuse of the Confidential Information and Inventions.  In
28    addition, Madsen agreed in the ECIA Agreement that Luxe was entitled to injunctive relief

1  should Madsen breach that agreement (see Section 6). Accordingly, Plaintiffs are entitled to a
2  preliminary and permanent injunction against Defendants.

3                            **SECOND CAUSE OF ACTION**

4            **(Trademark Infringement of LUSSORI® under 15 U.S.C. § 1114)**

5       34.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 33.

6       35.    Madsen is using the federally registered LUSSORI® trademark in connection with
7  the advertisement and sale of his design and consulting services without the authorization,
8  license or permission of Lussori. Madsen's use in interstate commerce of the LUSSORI®
9  trademark in connection with his services is likely to cause confusion, mistake or deception as to
10 the source, origin or approval of Madsen's services, in violation of Section 32(a) of the Lanham
11 Act, 15 U.S.C. § 1114.

12      36.    Madsen's activities are intended to, and are likely to, lead the public to conclude,
13 incorrectly, that his services are affiliated with, sponsored by or approved by Lussori, to the
14 damage of Lussori and the public. Madsen's conduct constitutes willful and deliberate
15 infringement of Lussori's trademark.

16      37.    Lussori is entitled to recover Defendants' profits and a reasonable royalty together
17 with its damages, which may be trebled, as well as its costs pursuant to Section 35(a) of the
18 Lanham Act, 15 U.S.C. § 1117(a).

19      38.    Defendants' activities have caused and will cause irreparable harm to Lussori for
20 which Lussori has no adequate remedy at law, in that (i) Lussori's trademark is a unique and
21 valuable property right which has no readily determinable market value; (ii) Defendants'
22 infringement constitutes an interference with Lussori's goodwill and customer relationships and
23 will substantially harm Lussori's reputation as a source of high quality goods as well as dilute the
24 substantial value of Lussori's trademarks; and (iii) Defendants' wrongful conduct, and the
25 damages resulting to Lussori, are continuing. Accordingly, Lussori is entitled to preliminary and
26 permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

27      39.    Defendants' unlawful and willful conduct renders this case an exceptional case,
28 further entitling Lussori to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

1

## THIRD CAUSE OF ACTION

2

### (False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a))

3        40.     Lussori realleges and incorporates by reference paragraphs 1 through 39.

4        41.     Madsen is using Lussori's and Vialuxe's trademarks in connection with the

5   advertisement and sale of his design and consulting services without the authorization, license or

6   permission of Lussori or Vialuxe. Madsen's use in interstate commerce of Lussori's and

7   Vialuxe's trademarks in connection with his services is likely to cause confusion, mistake or

8   deception as to the source, origin or approval of Madsen's services, in violation of Section 43(a)

9   of the Lanham Act, 15 U.S.C. § 1125(a).

10       42.     Madsen's activities are intended to, and are likely to, lead the public to conclude,

11   incorrectly, that his services are affiliated with, sponsored by or approved by Lussori or Vialuxe,

12   to the damage of Lussori, Vialuxe and the public. Madsen's conduct constitutes willful and

13   deliberate infringement of Lussori's and Vialuxe's trademarks.

14       43.     Lussori and Vialuxe are entitled to recover Defendants' profits and a reasonable

15   royalty together with its damages, which may be trebled, as well as its costs pursuant to Section

16   35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

17       44.     Defendants' activities have caused and will cause irreparable harm to Lussori and

18   Vialuxe for which they have no adequate remedy at law. Accordingly, Lussori and Vialuxe are

19   entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

20       45.     Defendants' unlawful and willful conduct renders this case an exceptional case,

21   further entitling Lussori and Vialuxe to recover attorneys' fees pursuant to 15 U.S.C. § 1117.

22

## FOURTH CAUSE OF ACTION

23

### (False Advertising under 15 U.S.C. § 1125(a))

24       46.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 45.

25       47.     In his advertising and promotional materials for his design consulting business,

26   Madsen falsely claims that he is the "Designer of Lussori and Vialuxe," and further

27   misrepresents that he was the sole designer of the Lussori and Vialuxe websites. These

28   representations are false or misleading in violation of Section 43(a) of the Lanham Act, 15

1  U.S.C. § 1125(a).

2      48.    Lussori and Vialuxe are entitled to recover Defendants' profits and a reasonable

3  royalty together with its damages, which may be trebled, as well as its costs pursuant to Section

4  35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

5      49.    Defendants' activities have caused and will cause irreparable harm to Lussori and

6  Vialuxe for which they have no adequate remedy at law. Accordingly, Lussori and Vialuxe are

7  entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

8      50.    Defendants' unlawful and willful conduct renders this case an exceptional case,

9  further entitling Lussori and Vialuxe to recover attorneys' fees pursuant to 15 U.S.C. § 1117.

10                          **FIFTH CAUSE OF ACTION**

11                **(False Advertising under Cal. Bus. & Prof. Code § 17500)**

12     51.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 50.

13     52.    In his advertising and promotional materials for his design consulting business,

14  Madsen falsely claims that he is the "Designer of Lussori and Vialuxe," and further

15  misrepresents that he was the sole designer of the Lussori and Vialuxe websites. These

16  representations are false or misleading in violation of California Business and Professions Code

17  § 17500.

18     53.    The full extent of the injuries caused by Defendants' false and misleading

19  advertising statements are not readily ascertainable. In addition, Madsen agreed in the ECIA

20  Agreement that Plaintiffs were entitled to injunctive relief should Madsen breach that agreement

21  (see Section 6). Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction

22  against Defendants.

23                          **SIXTH CAUSE OF ACTION**

24                **(Unfair Competition under Cal. Bus. & Prof. Code § 17200)**

25     54.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 53.

26     55.    Defendants' misuse of Plaintiffs' Confidential Information, Inventions and

27  trademarks constitutes unfair competition and unfair business practices under California

28  Business and Professions Code § 17200.

1    56.    The full extent of Plaintiffs' injuries caused by Defendants' unlawful, unfair and

2  fraudulent conduct are not readily ascertainable, and, without injunctive relief, Plaintiffs have no

3  means by which to control the misuse of their Confidential Information, Inventions and

4  trademarks.  In addition, Madsen agreed in the ECIA Agreement that Plaintiffs were entitled to

5  injunctive relief should Madsen breach that agreement (see Section 6).  Accordingly, Plaintiffs

6  are entitled to a preliminary and permanent injunction against Defendants.

7               **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiffs pray for the following relief:

9    1.    A preliminary and permanent injunction ordering Madsen and the Doe

10  defendants, and their agents, employees, servants, co-conspirators, and any persons in active

11  concert or participation with them, to:

12        a.    Refrain from using, reproducing or disclosing Plaintiffs' Confidential

13  Information in any manner;

14        b.    Refrain from using, reproducing or disclosing Plaintiffs' Inventions in any

15  manner;

16        c.    Immediately return to Plaintiffs all Luxe property and documents;

17        d.    Discontinue any use of Lussori's trademarks and logos beyond the limited

18  use permitted by law;

19        e.    Discontinue any use of Vialuxe's trademarks and logos beyond the limited

20  use permitted by law;

21        f.    Immediately destroy all false, misleading and infringing materials; and

22        g.    Refrain from making any false or misleading representations in

23  advertising and marketing materials related to work on the Lussori and Vialuxe websites.

24    2.    For an accounting of all profits earned by Madsen due to his use of Plaintiffs'

25  trademarks and disgorgement of such profits;

26    3.    For all costs associated with corrective advertising;

27    4.    For general, special, actual, and/or statutory damages in an amount to be

28  determined at trial;

1     5.     For treble damages;

2     6.     For attorneys' fees and costs;

3     7.     For prejudgment interest on any award; and

4     8.     For such additional relief as the Court deems just and proper.

5     Dated: April 30, 2008                  LATHAM & WATKINS LLP

7     By: _Richd B. Ulf._
                    Richard B. Ulmer Jr.

8                    Peter P. Chen
                    Perry J. Viscounty

9                    Jennifer L. Barry

10                   Attorneys for Plaintiffs
                    LUXE INTERNATIONAL INC.,

11                   LUSSORI, INC. and VIALUXE INC.

12

13                   **DEMAND FOR JURY TRIAL**

     Plaintiffs demand a trial by jury on all issues alleged in this Complaint.

14

15     Dated: April 30, 2008                  LATHAM & WATKINS LLP

16     By: _Richd Dhlf._
                    Richard B. Ulmer Jr.

17                    Peter P. Chen

18                    Perry J. Viscounty
                    Jennifer L. Barry

19

20                   Attorneys for Plaintiffs
                    LUXE INTERNATIONAL INC.,
                    LUSSORI, INC. and VIALUXE INC.

21

22

23

24

25

26

27

28

## LUSSORI INC.

## EMPLOYEE CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

In consideration of my employment, my continued employment and the payment of additional consideration of $500.00 by LUSSORI INC., formerly Greenwich Time, Inc. (the "Company") and effective as of the date that my employment by the Company first commenced, I, the undersigned, agree to the following terms of this EMPLOYEE CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT (the "Agreement") as follows:

### 1.   NONDISCLOSURE OF CONFIDENTIAL INFORMATION.

**1.1   Confidential Information.** During the term of my employment, I may receive and otherwise be exposed to confidential and proprietary information relating to the Company's business, strategies, designs and technologies, or to the Company's suppliers or customers. Such confidential and proprietary information may include but not be limited to confidential and proprietary information supplied to me with the legend "Confidential and Proprietary," or equivalent, and any of the following, whether or not marked as confidential or proprietary: the Company's marketing strategies, any Company customer information or user data, the Company's financial information, including without limitation sales, costs, profits and pricing methods, the Company's internal organization, employee and consultant information and customer lists, the Company's designs, the Company's technology, including discoveries, ideas, Inventions (as defined below), research and development efforts, processes, source code, methods, know-how, and all derivatives, improvements and enhancements related to any of the above which are created or developed by me while I am employed by the Company and information of third parties as to which Company has an obligation of confidentiality (all of the above collectively referred to as "Confidential Information").

**1.2   Duties.** I acknowledge the confidential and secret character of the Confidential Information, and agree that the Confidential Information is the exclusive and extremely valuable property of Company. Accordingly, I agree not to reproduce any of the Confidential Information without the applicable prior written consent of Company, not to use the Confidential Information

except in the performance of my authorized duties as an employee of Company, and not to disclose all or any part of the Confidential Information in any form to any third party, either during or after the term of my employment. Upon termination of my employment, I agree to cease using and to return to Company all whole and partial copies and derivatives of the Confidential Information, whether in my possession or under my direct or indirect control.

**2.   PROPERTY OF THE COMPANY.** All notes, memoranda, reports, drawings, blueprints, manuals, materials, data and other papers and records of every kind which shall come into my possession at any time after the commencement of my employment with the Company, relating to any Inventions (as defined below) or Confidential Information, shall be the sole and exclusive property of the Company. This property shall be surrendered to the Company upon termination of my employment with the Company, or upon request by the Company, at any other time either during or after the termination of such employment. I further agree that in the event of termination of my employment with the Company I will execute a Termination Certificate, substantially in the form attached hereto as Exhibit A.

**3.   INVENTIONS.**

**3.1   Disclosure.** I shall disclose promptly in writing to an officer or to attorneys of the Company any idea, invention, work of authorship, whether patentable or unpatentable, copyrightable or uncopyrightable, including, but not limited to, any computer program, code, documentation, improvement, method, process, discovery, concept, algorithm, development, secret process or contribution (any of the foregoing items hereinafter referred to as an "Invention") I may conceive, make, develop or work on, in whole or in part, solely or jointly with others. The disclosure required by this Section applies (a) during the period of my employment with the Company and for one year thereafter; (b) with respect to all Inventions whether or not they are conceived, made, developed or worked on by me during my regular hours of employment with the Company; (c) whether or not the Invention was made at the suggestion of the Company; (d) whether or not the Invention was reduced to drawings, written description,

documentation, models or other tangible form; and (e) whether or not the Invention is related to the general line of business engaged in by the Company.

**3.2    Assignment of Inventions to Company; Exemption of Certain Inventions.** I hereby assign to the Company without royalty or any other further consideration my entire right, title and interest in and to all Inventions that (a) relate to the subject matters related to my employment or (b) I conceive, make, develop or work on during the period of my employment with the Company and for one (1) year thereafter, except those Inventions that I develop entirely on my own time after the date of my employment with the Company without using the Company's equipment, supplies, facilities or Confidential Information, unless those Inventions either (i) relate at the time of conception or reduction to practice of the Invention to the Company's business, or actual or demonstrably anticipated research or development of the Company; or (ii) result from any work performed by me for the Company. I acknowledge and agree that the Company has hereby notified me that the assignment provided for in Section 3.2(b) does not apply to any Invention which qualifies fully for exemption from assignment under the provisions of Section 2870 of the California Labor Code, a copy of which is attached as Exhibit B.

**3.3    Records.** I will make and maintain adequate and current written records of all Inventions covered by Section 3.1. These records shall be and remain the property of the Company.

**3.4    Patents and Other Rights.** Subject to Section 3.2, I will assist the Company in obtaining, maintaining and enforcing patents, invention assignments and copyright assignments, and other proprietary rights in connection with any Invention covered by Section 3.1, and otherwise will assist the Company as reasonably required to perfect in the Company the rights, title and other interests in my work product granted to the Company under this Agreement. Reasonable costs related to such assistance, if required, will be paid by the Company. I further agree that my obligations under this Section 3.4 shall continue beyond the termination of my employment with the Company, but if I am called upon to render such assistance after the termination of such employment, I shall be entitled to a fair and reasonable rate of compensation for such assistance. I

shall, in addition, be entitled to reimbursement of any expenses incurred at the request of the Company relating to such assistance. If the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified above, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of this Section 3.4 with the same legal force and effect as if executed by me.

**3.5    Prior Contracts and Inventions; Information Belonging to Third Parties.** I represent and warrant that, except as set forth on Exhibit C hereto, there are no other contracts to assign Inventions that are now in existence between any other person or entity and me. I further represent that (a) I am not obligated under any consulting, employment or other agreement which would affect the Company's rights or my duties under this Agreement, (b) there is no action, investigation, or proceeding pending or threatened, or any basis therefor known to me involving my prior employment or any consultancy or the use of any information or techniques alleged to be proprietary to any former employer, and (c) the performance of my duties as an employee of the Company will not breach, or constitute a default under any agreement to which I am bound, including, without limitation, any agreement limiting the use or disclosure of proprietary information acquired in confidence prior to engagement by the Company. I will not, in connection with my employment by the Company, use or disclose to the Company any confidential, trade secret or other proprietary information of any previous employer or other person to which I am not lawfully entitled. As a matter of record, I attach as Exhibit C of this Agreement a brief description of all Inventions made or conceived by me prior to my employment with the Company which I desire to be excluded from this Agreement ("Background Technology"). I hereby grant Company a non-exclusive, royalty-free, perpetual and irrevocable, worldwide right to use and sublicense the use of Background Technology for the purpose of making, developing, marketing, reproducing, distributing, publicly performing and displaying, selling,

2

importing and supporting Company products and services, either directly or through multiple tiers of distribution.

4.    **ADDITIONAL ACTIVITIES.** I agree that during the period of my employment by the Company I will not, without the Company's express written consent, engage in any employment or business activity which is competitive with, or would otherwise conflict with my employment by, the Company. For purposes of clarity, Company acknowledges and agrees that, subject to compliance with this Agreement, I may do consulting work that is not competitive with, or otherwise conflict with my employment by, Company for WebPoint and SOI Analytics. Additionally, subject to compliance with this Agreement, if I do consulting work for a third party that is not competitive with or does not conflict with my employment by, Company, but later becomes competitive with or conflicts with my employment by, the Company, I will promptly notify Company of same, or Company may notify me of same, and I will work with Company in good faith to resolve the conflict. I agree further that for the period of my employment by the Company and for one (1) year after the date of termination of my employment by the Company I will not, either directly or through others, solicit or attempt to solicit any employee, independent contractor or consultant of the Company to terminate his or her relationship with the Company in order to become an employee, consultant or independent contractor to or for any other person or entity.

5.    **EMPLOYMENT.** I agree and understand that nothing in this Agreement shall confer any rights with respect to continuation of employment by the Company, nor shall it interfere in any way with my rights or the Company's rights to terminate my employment at any time with or without cause.

6.    **MISCELLANEOUS.** The parties' rights and obligations under this Agreement will bind and inure to the benefit of their respective successors, heirs, executors, and administrators and permitted assigns. I will not assign this Agreement or its obligations hereunder without the prior written consent of the Company and any such purported assignment shall be null and void. The obligations pursuant to Sections

1, 2 and 3 of this Agreement shall apply at any time during which I was previously employed, or am in the future employed, by the Company as a consultant if no other agreement governs non-disclosure and assignment of inventions during such period. This Agreement constitutes the parties' final, exclusive and complete understanding and agreement with respect to the subject matter hereof, and supersede all prior and contemporaneous understandings and agreements relating to its subject matter. This Agreement may not be waived, modified, amended or assigned unless mutually agreed upon in writing by both parties. In the event any provision of this Agreement is found to be legally unenforceable, such unenforceability shall not prevent enforcement of any other provision of the Agreement. I acknowledge that the Company will suffer substantial damages not readily ascertainable or compensable in terms of money in the event of the breach of any of my obligations under this Agreement. I therefore agree that the Company shall be entitled (without limitation of any other rights or remedies otherwise available to the Company) to obtain an injunction from any court of competent jurisdiction prohibiting the continuance or recurrence of any breach of this Agreement. The rights and obligations of the parties under this Agreement shall be governed in all respects by the laws of the State of California exclusively, as such laws apply to contracts between California residents performed entirely within California. I agree that upon Company's request, all disputes arising hereunder shall be adjudicated in the state and federal courts having jurisdiction over disputes arising in Santa Clara County, California, and I hereby agree to consent to the personal jurisdiction of such courts. Any notices required or permitted hereunder shall be given to the appropriate party at the address specified above or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery, or sent by certified or registered mail, postage prepaid, three (3) days after the date of mailing. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

[*Signature Page Follows*]

IN WITNESS WHEREOF, I have executed this document as of the _16_ day of _November_, 2006.

_____
**Employee**

**AGREED AND ACKNOWLEDGED:**

**LUSSORI INC.**
By: _____
Name: _Lawrence Kosick_
Title: _President_

[Signature Page to Employee Confidentiality and Inventions Assignment Agreement]

## EXHIBIT A

### Termination Certificate

I, the undersigned, hereby certify that I do not have in my possession, nor have I failed to return, any documents or materials relating to the business of Lussori Inc. or its affiliates (the "Company"), or copies thereof, including, without limitation, any item of Confidential Information listed in Section 3 of the Company's Employee Confidentiality And Inventions Assignment Agreement (the "Agreement") to which I am a party.

I further certify that I have complied with all of the terms of the Agreement signed by me, including the reporting of any Inventions (as defined in the Agreement) covered by the Agreement.

I further agree that in compliance with the Agreement, I will preserve as confidential any information relating to the Company or any of it business partners, clients, consultants or licensees which has been disclosed to me in confidence during the course of my employment by the Company unless authorized in writing to do so by an officer of the Company.

Date: _____

_____
(Employee's Signature)

_____
(Printed or Typed Name of Employee)

5

## EXHIBIT B

### California Labor Code

**California Labor Code § 2870.** Application of provision providing that employee shall assign or offer to assign rights in invention to **employer**.

(a)     Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

　　　(1)     Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

　　　(2)     Result from any work performed by the employee for the employer.

(b)     To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.


I acknowledge receipt of a copy of this notification.

By: _____

(Printed Name of Employee)

Date: _Nov 16, 2005_


Witnessed By:

_Lawrence Kosick_

(Printed Name of Representative)

## EXHIBIT C

### Background Technology

(List here prior contracts to assign Inventions that are now in existence between any other person or entity and you.)    NONE

(List here previous Inventions which you desire to have specifically excluded from the operation of this Agreement. Continue on reverse side if necessary.)

NONE

JM.

# SOICREATIVE

## SPECIALIZING IN THE GROWTH OF YOUR RETAIL BUSINESS

SOI Creative is founded by John A. Madsen, former Director of Technology of Lussori, a Carmel based retailer. John left early last year to found the design firm SOI Creative, which focuses on the unique demands of luxury retailers.

### Our services include:

- Print catalogs
- Retail website design
- Electronic catalogs
- Customer management systems

For more information on what we can do to increase your sales, contact us:

SOI Creative    916-627-8299

john@soicreative.com

### Our Recent Experience:





Lussori.com ◆ Swisswatchgallery.com ◆ Vialuxe.com




